1

**SUSI & GURA**

(SPACE BELOW FOR FILING STAMP ONLY)

A Professional Corporation
2    ATTORNEYS AT LAW
SEVEN WEST FIGUEROA STREET, SECOND FLOOR
3    SANTA BARBARA, CALIFORNIA 93101-3191
Telephone:  (805) 965-1011
4    Facsimile:   (805) 965-7351

Peter Susi, Bar No. 62957
5    Jonathan Gura, Bar No. 214240

6

Attorneys for Debtor and Debtor-in-Possession
7

8

9                    **UNITED STATES BANKRUPTCY COURT**

10          **CENTRAL DISTRICT OF CALIFORNIA, NORTHERN DIVISION**

11

12    In re                               )    BK No.  9:12-bk-12837-RR
                                          )
13    ALMA ROSA WINERY & VINEYARDS,       )    Chapter 11
      LLC,                                )
14                                        )
              Debtor.                     )    DEBTOR'S MOTION PURSUANT TO
15                                        )    11 U.S.C. § 364 FOR AUTHORITY
                                          )    TO EXTEND MERCHANT SERVICES
16                                        )    AGREEMENT WITH SILICON VALLEY
                                          )    BANK; DECLARATION OF RICHARD
17                                        )    SANFORD
                                          )
18                                        )
                                          )    No hearing requested pursuant
19                                        )    Local Bankruptcy Rule 9013-
                                          )    1(o)
20                                        )
                                          )
21                                        )
                                          )
22                                        )
                                          )
23    ────────────────────────────────   )

24

25

26

27

28

114\996354.2

1  TO THE HONORABLE ROBIN L. RIBLET, UNITED STATES BANKRUPTCY

2  JUDGE, THE OFFICE OF THE UNITED STATES TRUSTEE, SECURED

3  CREDITORS, THE TWENTY LARGEST UNSECURED CREDITORS, AND

4  INTERESTED PARTIES:

5      Alma Rosa Winery & Vineyards, LLC, the above-captioned

6  debtor and debtor-in-possession (the "Debtor"), submits this

7  motion (the "Motion") for entry of an Order authorizing the

8  Debtor to extend the Merchant Services Agreement with Silicon

9  Valley Bank ("SVB") pursuant to Bankruptcy Code Section 364.

10     The Debtor is in the business of selling wine and accepts

11 credit cards as a form of payment.  SVB has provided credit

12 card processing services for the Debtor by allowing the Debtor

13 to maintain a merchant services bank account (the "MS Account")

14 at the bank pursuant to a Merchant Services Agreement ("MS

15 Agreement").  A copy of the MS Agreement is attached hereto as

16 Exhibit "A."  SVB has also been the Debtor's lender, and was

17 owed approximately $1.7 million on the petition date (the

18 "Prepetition Indebtedness").

19     The MS Agreement expired December 2, 2012, but the parties

20 extended its term pursuant to that certain "Second Stipulation

21 Regarding Interim Use of Cash Collateral and Adequate

22 Protection" entered into between the Debtor and SVB on

23 September 28, 2012.  A copy of the stipulation is attached

24 hereto as Exhibit "B."  SVB agreed to extend the MS Agreement

25 until such time as the Prepetition Indebtedness was paid off.

26     Meanwhile, on April 11, 2013, the owners of the Debtor,

27 Richard and Thekla Sanford, debtors in their own related

28 chapter 11 bankruptcy cases and co-obligators on the

-2-

114\996354.2

1   Prepetition Indebtedness, sold a piece of real property that

2   resulted in a substantial payment to SVB on the Prepetition

3   Indebtedness; and SVB agreed to accept the payment in full

4   satisfaction of the Prepetition Indebtedness.

5      The Debtor has attempted to replace the SVB merchant

6   services facility with a similar service by another bank or

7   financial institution but is unable to do so due to its status

8   as a Chapter 11 debtor.  Accordingly, the Debtor has requested,

9   and SVB has agreed, to further extend the MS Agreement, and the

10  parties hereby seek bankruptcy court approval pursuant to

11  Section 364 of the Bankruptcy Code for the extension.

12     Specifically, the parties have agreed that the Merchant

13  Services Agreement shall be extended for the six month period

14  beginning April 11, 2013 and ending October 11, 2013, pursuant

15  to the terms of the Second Stipulation, but in addition the

16  Debtor shall deposit $15,000 in a deposit account at SVB (the

17  "Pledged Funds").  The Pledged Funds shall be pledged to SVB to

18  secure the obligations under the MS Agreement.  The MS

19  Agreement shall terminate on October 11, 2013, and no services

20  under the agreement shall be provided thereafter, but SVB shall

21  hold the Pledged Funds until at least January 9, 2014 to ensure

22  funds are available for recourse during the 90 day period

23  following the termination of the MS Agreement or following the

24  last charge back, whichever occurs later.  After the later of

25  January 9, 2014 or 90 days following the last charge back, SVB

26  shall permit the Debtor to withdraw the balance of the Pledged

27  Funds. Charge backs may be debited against the Debtor's regular

28  merchant services account to the extent funds are available but

-3-

114\996354.2

1  the Pledged Funds shall be available as recourse in the event

2  that there are insufficient funds in the regular merchant

3  services account.

4                          Conclusion

5      The Debtor requests that the Court enter an order

6  authorizing the Debtor to agree to the terms described herein

7  and granting it such other and further relief as is just and

8  proper.

9

10     DATED: *April 12* , 2013

11

12                          SUSI & GURA
                           A Professional Corporation
13

14

15                    By: _____
                         JONATHAN G. GURA
16                       Attorneys for Debtor and
                         Debtor-in-Possession
17

18

19

20

21

22

23

24

25

26

27

28

114\996354.2

### DECLARATION OF RICHARD SANFORD

I, Richard Sanford, declare:

1.    I am the owner and manager of Alma Rosa Winery & Vineyards, LLC (the "Debtor"), the debtor and debtor-in-possession in the above captioned chapter 11 bankruptcy case.

2.    The Debtor is in the business of selling wine and accepts credit cards as a form of payment.

3.    Silicon Valley Bank ("SVB") has provided credit card processing services for the Debtor by allowing the Debtor to maintain a merchant services bank account (the "MS Account") at the bank pursuant to a Merchant Services Agreement ("MS Agreement").  A copy of the MS Agreement is attached hereto as Exhibit "A."

4.    SVB has also been the Debtor's lender, and was owed approximately $1.7 million on the petition date (the "Prepetition Indebtedness").

5.    The MS Agreement expired December 2, 2012, but the parties extended its term pursuant to that certain "Second Stipulation Regarding Interim Use of Cash Collateral and Adequate Protection" entered into between the Debtor and SVB on September 28, 2012.  A copy of the stipulation is attached hereto as Exhibit "B."

6.    SVB agreed to extend the MS Agreement until such time as the Prepetition Indebtedness was paid off.

7.    Meanwhile, on April 11, 2013, my wife and I, debtors in our own related chapter 11 bankruptcy cases and co-obligators on the Prepetition Indebtedness, sold a piece of real property that resulted in a substantial payment to SVB on

-5-

114\996354.2

1  the Prepetition Indebtedness; and SVB agreed to accept the

2  payment in full satisfaction of the Prepetition Indebtedness.

3      8.   The Debtor has attempted to replace the SVB merchant

4  services facility with a similar service by another bank or

5  financial institution but is unable to do so due to its status

6  as a Chapter 11 debtor.  Accordingly, I have requested, and SVB

7  has agreed, to further extend the MS Agreement.

8      9.   Specifically, the parties have agreed that the

9  Merchant Services Agreement shall be extended for the six month

10  period beginning April 11, 2013 and ending October 11, 2013,

11  pursuant to the terms of the Second Stipulation, but in

12  addition the Debtor shall deposit $15,000 in a deposit account

13  at SVB (the "Pledged Funds").

14      10.  The Pledged Funds shall be pledged to SVB to secure

15  the obligations under the MS Agreement.

16      11.  The MS Agreement shall terminate on October 11, 2013,

17  and no services under the agreement shall be provided

18  thereafter, but SVB shall hold the Pledged Funds until at least

19  January 9, 2014 to ensure funds are available for recourse

20  during the 90 day period following the termination of the MS

21  Agreement or following the last charge back, whichever occurs

22  later.

23      12.  After the later of January 9, 2014 or 90 days

24  following the last charge back, SVB shall permit the Debtor to

25  withdraw the balance of the Pledged Funds.

26      13.  Charge backs may be debited against the Debtor's

27  regular merchant services account to the extent funds are

28  available but the Pledged Funds shall be available as recourse

114\996354.2

1 | in the event that there are insufficient funds in the regular

2 | merchant services account.

3

4

5 |     I declare under penalty of perjury under the laws of the

6 | United States of America that the foregoing is true and

7 | correct.

8 |     Executed this 12th day of _April_ , 2013, at

9 | Buellton, California.

10 | RICHARD SANFORD

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28

-7-

 **Silicon Valley Bank**

**Pricing Schedule**

By signing the Merchant Application, Merchant understands the rates and fees stated below correspond to the volume and average ticket indicated on page 1 of the Application. In the event Merchant's actual activity is less than the volume and average ticket on page 1, Merchant is subject to an increase in rates and fees.

| Business Name (as shown on Application) | Contact Name | Phone Number |
|---|---|---|
| Alma Rosa Winery & Vineyards LLC | | 805-688-9090 |

Priced as: ☐ Retail ☒ Moto ☐ Hotel ☐ Supermarket
Visa Payment Options: ☐ Credit/Business Cards ☐ Consumer Debit/Prepaid Cards ☐ Both

### 1. Visa/MasterCard Rates & Fees

| | | |
|---|---|---|
| ☐ Floating Rate Plan: $25 Minimum Discount, Non-Qual Assessment, Variable Discount Rate | | |
| ☒ Fixed Rate Plan: $25 Minimum Discount, Non-Qual Assessment, Fixed Discount Rate | Rate | 1.95 % |
| ☐ Interchange Plan: $25 Minimum Discount, Actual Interchange, Per Item Fee | Per Item | .13 ¢ |
| ☐ Combination Plan: $25 Minimum Discount, Non-Qual Assessment, Fixed Discount+Per Item | Rate % Per Item | |
| Visa/MasterCard Authorization Fee: ☒ 10¢ ☐ 12¢ ☐ 15¢ ☐ 17¢ ☐ 20¢ ☐ 25¢ ☐ 27¢ ☐ 30¢ | | |

### 2. Other Transaction Fees

| Diners/Carte Blanche | | ¢ |
|---|---|---|
| Discover/Novus | 15 | ¢ |
| JCB | | ¢ |
| American Express | 15 | ¢ |
| Debit Cards | | ¢ |
| Check Verification | | ¢ |
| Dial Pay Authorization & Capture | | ¢ |
| Internet Provider Transaction Fee | | ¢ |

### 3. Miscellaneous Fees

| New Account Application (One Time) | $ |
|---|---|
| New Account Setup (One Time) | $ 75 - Waive per year |
| Verisign Internet Service Setup (One Time) | $ |
| Verisign Monthly Service Fee | $ |
| Chargebacks (per Chargeback) | $ 15 |
| Help Desk (Monthly) | $ |
| Merchant Statement (Monthly) | $ 1.50 |
| Web Reporting (Monthly) | $ |

### 4. Equipment/Software Fees

| Device | Rent or Purchase | Per Item | Quantity | Total |
|---|---|---|---|---|
| Terminal/Printer Set | | | | |
| Terminal/Printer/Pinpad Set | | | | |
| Terminal | | | | |
| Printer | | | | |
| Pinpad | | | | |
| Imprinter | | | | |
| PC Software License | | | | |
| Monthly Support (Merchant Owned Equipment) | | | | |

Comments:

| | | Subtotal | |
|---|---|---|---|
| | | Sales Tax (if necessary) | |
| | | Total | |

### Merchant Signatures

By submitting this Merchant Account Application, Merchant: 1) Certifies that all information provided in this Application is correct, 2) Understands additional information may be needed before this Application can be fully evaluated, 3) Has reviewed and accepted all terms of the attached Merchant Agreement and Pricing Schedule, 4) Authorizes credit and debit entries to Merchant's business checking account, 5) Agrees to notify Silicon Valley Bank if any information in this Application changes, 6) Understands that incomplete or inaccurate information may result in account denial or cancellation, 7) Agrees that in the event the Merchant Agreement is modified, continuing to process transactions constitutes acceptance of the revised Merchant Agreement, 8) Authorizes the request of consumer and business credit reports from consumer and business credit reporting agencies, and verification of all information contained in this Application.

| Printed Name Owner/Officer/Partner 1 | Signature | Date |
|---|---|---|
| ROBERT CZAPLEWO | | 7-MAR-2008 |
| Printed Name Owner/Officer/Partner 2 | Signature | Date |

### For Bank or Company Use
When visiting the merchant's place of business, please answer the following questions and sign below.

Address of location inspected
☐ Business Address ☐ Mailing Address ☐ Other:

| Does name posted at business match business name on application? | Are store hours posted? |
|---|---|
| Does location have appropriate business signage? | Did you view merchant's inventory? |
| Was inventory consistent with merchant's type of business? | # of employees: |
| Does inventory appear to be adequate for the sales volume indicated on the application? | |

| Bank or Company Name | Bank or Company Region | Branch or Office Name | Branch or Office # |
|---|---|---|---|
| Silicon Valley Bank | | | |
| Sales Representative Name | Sales Rep Phone # | Sales Rep Region | Sales Rep Code |

Silicon Valley Bank, ATTN: Cash Management HG220, 3003 Tasman Dr., Santa Clara CA 95054-1191

# EXHIBIT "A"

8

# Silicon Valley Bank

**Merchant Agreement**

This agreement is between Silicon Valley Bank ("SVB") and a business ("Merchant") that has requested payment processing services through SVB. Merchant understands that submission of a Merchant Account Application is 1) subject to approval by SVB and, 2) signifies Merchant's acceptance of the terms of this Merchant Agreement and Pricing Schedule.

1. **Card Acceptance:** Merchant agrees to accept payment options in accordance with association, network, and issuer guidelines. Merchant desires to accept the following payment options:  ☐ Credit/Business Cards,  ☐ Consumer Debit/Prepaid Cards,  ☑ Both. If an option is not specified, Bank will assume Merchant desires to accept Both. In the event Merchant desires not to accept Credit/Business Cards or Debit/Prepaid Cards, Merchant is responsible for examining cards and indicating non-acceptance to cardholders as appropriate. If Merchant desires not to accept Credit/Business Cards or Debit/Prepaid Cards but then submits those payment types for transaction processing, the transactions will be subject to appropriate interchange and other normal transaction fees.

2. **Payment Processing:** Merchant agrees to process payments as instructed in operating cards and guides provided by SVB in conjunction with payment processing solutions.

3. **American Express:** By signing the Merchant Account Application, Merchant represents that the information Merchant has provided on the Merchant Account Application is complete and accurate. Merchant understands that the Terms and Conditions for American Express® Card Acceptance ("Terms and Conditions") will be sent to the business entity indicated in the Merchant Account Application along with the welcome letter upon approval of such business entity to accept the American Express Card by American Express Travel Related Services Company, Inc. By accepting the American Express card for the purchase of goods and/or services, Merchant agrees to be bound by the Terms and Conditions.

4. **Payment Solutions:** Merchant agrees to use the payment processing solution for which the merchant has applied and to notify SVB of any changes, including the addition or deletion of payment options and the addition or deletion of terminals or other equipment. If Merchant uses a payment solution not provided by SVB, Merchant is solely responsible for all risks associated with using such solution.

5. **Card Verification:** Merchant agrees to follow proper card acceptance procedures.
   - For Merchants, described as merchants who operate their business from a retail establishment, procedures include an examination of cards to verify the presence of appropriate card marks, cardholder signature, and valid start and expiration dates.
   - For Internet or MOTO Merchants, described as merchants who provide goods and services through the Internet or through Mail Order or Telephone Order (MOTO), the use of AVS (Address Verification Service) is required for all transactions processed.

6. **Card Present/Not Present:** Merchant understands the card must be present at the time of a transaction in order for the merchant to perform the transaction.
   - Merchant can process transactions in which cards are not present (for example, telephone, mail order, internet sales) only 1) For Merchants, if Merchant has notified Bank prior to processing such transactions, 2) For Internet or MOTO Merchants, if Merchant operates in a Card Not Present environment and notified Bank of this environment on the Merchant Account Application.
   - Internet and MOTO Merchants must observe best practices established for internet and direct marketers, including disclosure of Merchant's physical address and customer service phone number and hours of operation.
   - Merchant understands that when a card is not present at the time of a transaction, a higher degree of risk exists that can result in higher transaction fees, possible chargebacks, and potential merchant account cancellation in the event of excessive chargebacks or fraudulent transactions.

7. **Authorization:** Merchant understands that an authorization must be obtained for each transaction, regardless of dollar amount, and included on the sales receipt.
   - In the event of the failure of electronic point-of-sale equipment, Merchant agrees to obtain voice authorizations as instructed in operating cards and guides provided by Bank.
   - Merchant understands that an authorization is not a guarantee of payment, but an indication that at the time of the authorization, the card account is open and has available funds.
   - Merchant agrees not to accept a card or submit a transaction for settlement when authorization is denied
   - Merchant will not try to gain an authorization by splitting the amount of a transaction into smaller, separate amounts.

8. **Sales Receipts:**
   - Sales receipts must include the following information: 1) Merchant name, 2) Type of transaction, 3) Value of transaction, 4) Date of the transaction, 5) Terminal location where the transaction occurred, 6) Account number of the cardholder, and 7) Authorization number.
   - If Merchant uses an electronic printer connected to an electronic point-of-sale device, Merchant must obtain the cardholder's signature on the printed sales receipt.
   - If Merchant uses an electronic printer but keys the card number into the terminal, Merchant must: 1) Obtain the cardholder's signature on the electronic printer receipt, 2) Imprint the card on a sales draft using an imprinter and Bank supplied imprinter plate, 3) Complete the entire imprinted sales draft, 4) Obtain the cardholder's signature on the imprinted sales draft.
   - Internet Merchants must provide customers with a sales confirmation through e-mail. The sales confirmation must include the following: 1) Merchant name, 2) Type of transaction, 3) Description of the items purchased and their value, 4) Date of the transaction and date shipped, 5), Truncated Account number of the cardholder, and 6) Authorization number.
   - In all cases, Merchant is responsible for ensuring the legibility and completeness of sales receipts and sales confirmations.

9. **Back-Up Procedures:** When Merchant is unable to obtain electronic authorization due to malfunctioning equipment, communication interruption or other circumstances, Merchant shall handle authorizations in accordance with back-up procedures outlined in the operating guide. All non-bankcard authorizations shall be handled in accordance with the guidelines of the issuing companies of those cards.

10. **Cardholder Signatures:** Merchant is responsible for obtaining the cardholder's signature on each sales receipt and verifying the signature on the sales receipt matches the signature on the card. Cardholder signatures are required on all sales receipts unless Merchant has arranged with Bank to process transactions in which cards are not present. If Merchant is presented with an unsigned card, Merchant shall request further identification for verification. For Internet and MOTO Merchants, cardholder signatures are not applicable, but Merchant must have made previous arrangements with SVB to process transactions for which cards are not present.

11. **Returns:** Merchant agrees to clearly disclose Merchant's return policy to cardholders and to honor the return policy as disclosed.
   - For Merchants, clear disclosure consists of displaying applicable refund options on sales receipts near the signature area and in type at least ¼ inch high.
   - For Internet Merchants, the return policy must be clearly displayed at the merchant's internet-based store.
   - For MOTO Merchants, transactions fulfilled as a telephone order cannot be protected by any restrictive return policies, as proper written disclosure cannot be made at the time of purchase.
   - In the case of returns in which Merchant extends a refund for purchases made with a charge card, Merchant shall not make any cash refunds but process a credit transaction according to instructions provided by SVB in operating cards and guides. Merchant must complete a credit voucher signed by the cardholder at the time of a return.
   - Merchant understands that when credits are issued, Merchant's designated business checking account is debited for the credit amounts.
   - Per item transaction fees apply to credits as well as purchases

12. **Settlement:** Merchant agrees to balance and submit transactions for settlement each business day. Merchant understands that by not submitting transactions for settlement each business day, a higher degree of risk exists that can result in higher transaction fees and possible chargebacks.

13. **Payments:** All payments to Merchant for authorized transactions shall be made through the Automated Clearing House (ACH) and to the business checking account designated by Merchant in the Merchant Account Application. The time between the day of a transaction and payment to Merchant is dependent on when transactions are submitted and processed for settlement, when payments are processed by the ACH, and when Merchant's bank receives and processes payments from the ACH. Payments owed Merchant may be made in full, less discount, credits, chargebacks, fees, and other adjustments. Payments owed to Bank may be deducted from incoming transactions or debited against Merchant's designated business checking account at a time determined by Bank.

14. **Business Checking:** Merchant authorizes Bank, in accordance with this agreement, or other obligations owed to Bank, or its agents, to initiate credit and debit entries to Merchant's business checking account, or any other account maintained by Merchant at any financial institution that receives ACH files. This authority shall remain in effect until Bank has received written notification from Merchant of Merchant's termination of this agreement, Merchant has satisfied all payments owed to Bank, and all transactions submitted by Merchant have exceeded dispute and chargeback time limitations.

15. **Sales Receipt Storage:** Merchant agrees to store and maintain sales receipts for at least 2 years following the date of transaction. At the end of this period, Merchant shall destroy the records, leaving no legible information.

16. **Equipment:** Merchant must possess appropriate equipment for processing transactions in accordance with their merchant account, i.e. properly installed and programmed terminals, magnetic stripe readers, PIN pads, printers, etc.

17. **Bank-Provided Equipment:** Upon Merchant's request, Bank shall provide terminals and related equipment to Merchant for a fee. Bank shall be responsible for the maintenance of Bank provided equipment provided Merchant pays for all maintenance or repairs required as a result of Merchant's negligence or misuse of equipment. Merchant shall notify Bank immediately concerning any noticeable malfunction of or damage to the equipment. Equipment is the sole property of Bank and Merchant has no interest or property rights.

18. **Retrieval Request:** Merchant agrees to mail or fax copies of sales receipts to Bank within 24 hours of receiving a retrieval request from Bank. Merchant understands that failure to respond to a retrieval request within the time period with a copy of the transaction and proof of delivery to Bank shall constitute a waiver of all rights of Merchant to dispute the chargeback. This may result in higher transaction fees and termination by Bank or Merchant's account. For Merchants, the sales draft must be legible, accurate, complete, and signed by the cardholder. For Internet Merchants, a facsimile of the e-mail sent to the cardholder must be provided. For MOTO Merchants, the sales receipt completed by Merchant must be provided.

SVB 12-03-03

9

19. **Chargebacks:** Merchant agrees to pay SVB for transactions successfully challenged by cardholders or card issuers in accordance with association guidelines relating to chargebacks and to permit SVB to debit Merchant's designated business checking account or other account as a result of chargebacks.
- Chargebacks can be caused by, but not limited to: 1) Illegible or incomplete sales drafts, 2) Duplicate sales drafts from the same transaction, 3) Cardholder disputes regarding the product, service, or price, 4) Merchant violations of association agreements, 5) Unauthorized transactions, 6) Transactions performed with counterfeit, altered, or expired cards.
- Merchant authorizes SVB at its discretion to establish a reserve account held by SVB with an amount determined by SVB to be used to offset chargebacks.
- SVB has the right to increase or decrease the amount of the reserve account depending on Merchant's chargeback activity or other risk factors determined by SVB.
- In the event of termination of Merchant's account by Merchant or SVB, SVB has the right to have a reserve account remain in effect for Merchant for at least 180 days following the date of termination of Merchant's account.
- If Merchant owes SVB amounts under the terms of this agreement and fails to pay in full within 24 hours of a request by SVB, SVB has the right to consider amounts as uncollected and can initiate collection procedures, which may include the use of outside collection agents.
- Merchant shall be responsible for any expenses incurred by SVB or its agents in an effort to collect amounts owed by Merchant.
- In the event that SVB incurs fines from the associations due to excessive chargebacks, Merchant is responsible for such fines and authorizes SVB to debit merchant's designated business checking account accordingly.

20. **Merchant Warranties:**
- Merchant warrants and agrees to fully comply with all federal, state, and local laws, rules and regulations, as amended periodically, including the Federal Truth-in-Lending Act and Regulation Z.
- Merchant warrants that each transaction presented by Merchant to SVB for payment, 1) is a valid transaction completed in accordance with association and network regulations and according to instructions provided in operating cards and guides provided by SVB, 2) is submitted following the delivery of merchandise or services to cardholders as described in the sales receipt, 3) Was completed by Merchant identified in the Merchant Account Application and no other entry, 4) Has not imposed, directly or indirectly, separate or additional fees or surcharges to the cardholder, and 5) is not subject to any lien.
- Merchant warrants that 1) To the best of Merchant's knowledge, the cardholder involved in a transaction has no reason to dispute the transaction, and 2) in the event of a cardholder or card issuer dispute, Merchant shall hold SVB harmless.
- Merchant warrants and agrees that without the cardholder's written consent, Merchant shall not sell, purchase, exchange, or disclose a cardholder's account number or other information to any third party for any reason other than to Merchant's agents for the purpose of assisting Merchant in the delivery of merchandise or services as part of the transaction, or to SVB, the card associations or networks, or pursuant to a government request

21. **Fraud/Factoring:** Merchant shall not accept, deposit, process, or enter into Merchant's terminal, a fraudulent sale, or any sale made by any other merchant. If Merchant does so, SVB can immediately terminate Merchant's account, place payments owed to Merchant on hold for at least 180 days, and add Merchant to the Terminated Merchant File. This action may result in preventing the Merchant from accepting card payments again or establishing another merchant account.

22. **Payment Withholding:** In the event SVB believes fraud by Merchant has occurred or Merchant fails to provide funds for debits due to chargebacks, credits, or fees, SVB may hold all payments owed to Merchant for submitted transactions until Merchant fulfills financial obligations to SVB. Merchant understands that payments to Merchant's account that result from submitted transactions are provisional and may be debited from Merchant's account in accordance with association and network rules. If Merchant ceases to do business and does not claim funds held under this provision within 180 days, SVB may retain these funds.

23. **Terminated Merchant File:** Merchant understands that SVB can add Merchant to the Terminated Merchant File if Merchant fails to comply with the terms of this Agreement or the provisions of the association rules.

24. **Discount/Fees:** "Discount" refers to a percentage of the gross transactions processed by Merchant. "Interchange" refers to amounts assessed by the associations for the processing of transactions. "Fees" refers to amounts charged for any other purpose, including per transaction fees, chargeback fees, equipment use fees, or fees for other miscellaneous services.
- Amounts owed by Merchant to cover discount, interchange, or fees, are identified in a Pricing Schedule provided in conjunction with this Agreement.
- SVB has the right to modify the amounts as necessary to offset any increase in costs experienced by SVB due to: association or network changes in rules, regulations, or operating procedures; any additional requirements imposed by federal or state government agencies or regulatory authorities; increases in telecommunication or other operating costs; or other increases in costs associated with providing services to Merchant under the terms of this Agreement.
- Merchant agrees to pay the fees and charges identified in the Pricing Schedule, incorporated herein, and understands the Pricing Schedule may be modified, amended, or supplemented in accordance with this Agreement.
- Merchant understands that SVB agrees to provide at least 30 days advanced written notice to Merchant in the event of changes to the Pricing Schedule.

25. **Initial Discount:** Merchant understands that initial discount rates assessed by SVB are based on Merchant's projected sales volume, average transaction amount, and card acceptance practices. If Merchant's actual sales volume and average transaction amount are less than Merchant's projected sales volume and average transaction amount, SVB reserves the right to adjust discount rates to reflect Merchant's actual sales volume and average transaction amount without 30 days advanced written notice.

26. **Merchant Account Application:** Merchant warrants that all information provided in the Merchant Account Application is complete and accurate. Merchant understands that if SVB finds information provided in the Merchant Account Application to be inaccurate, SVB has the right to immediately terminate Merchant's account. Merchant understands that discount rates, interchange, and other fees are based on sales volumes and average ticket identified by merchant in the Merchant Account Application. Should Merchant's actual sales volumes and average ticket vary from information provided in the Merchant Account Application, Merchant agrees that SVB can adjust discount, interchange, and fees accordingly, without prior notice to Merchant.

27. **Billing:** Merchant must notify SVB of any billing error within 60 days of the billing date.

28. **Term:** The initial term of this Agreement shall be for one year, subject to approval by SVB, and shall renew for each successive one-year term unless either party provides the other with 30 days written notice prior to the expiration of the current term.

29. **Termination:** Provided Merchant elects not to renew this Agreement and notifies SVB in writing prior to the expiration of the current term, Merchant shall not be subject to a termination fee but agrees to pay all other amounts owed to SVB by Merchant. SVB can debit this amount from Merchant's business checking account. SVB shall have the right to terminate this Agreement at any time without cause or notice.

30. **Indemnity:** Merchant agrees to indemnify and hold harmless SVB from any claims, damages, costs, fees, and expenses, including reasonable attorneys' fees and expenses arising from 1) Merchant's provision, failure to provide, or alleged failure to provide, goods or services to cardholders, 2) Merchant's breach of terms or warranties set forth in this Agreement, 3) Any action by any federal or state agency, authority, or regulatory body involving Merchant, 4) Any claim for funds owed by Merchant. Merchant acknowledges liability for the actions, or failure to act, of Merchant's employees and agents in regard to this Agreement.

31. **Force Majeure:** Both parties will be released from liability if unable to perform as specified due to wars, riots, acts of God, etc. SVB liability to Merchant shall not exceed the amount of the sales draft and SVB shall not be liable for any incidental or consequential damages. SVB accepts no responsibility other than authorization and electronic capture services for non-SVB cards. For check authorization, validation, or guarantee service, SVB accepts no responsibility other than programming the electronic equipment to connect Merchant to third-party vendor.

32. **Notices:** Notices to Merchant will be sent to the same address provided by Merchant for the delivery of billing statements or other communications.
- Merchant shall notify SVB in writing at least 30 calendar days prior to any change in Merchant's name or location.
- Notices to SVB must be written and will be deemed received when delivered in person or by other means providing a record of receipt from the U.S. Postal Service or other express mail or Messenger service.
- Notices to Silicon Valley SVB must be sent to: Silicon Valley SVB, ATTN: Cash Management HG220, 3003 Tasman Dr., Santa Clara CA 95054-1191.

33. **Arbitration:** Any controversy or claim between or among the parties hereto will be determined by binding arbitration in accordance with the Federal Arbitration Act, applicable state law, and an arbitration administrator determined by SVB. Judgment on any arbitration award may be entered in any court having jurisdiction. Any party to this Agreement may bring an action, including a summary or expedited proceeding, to compel arbitration of any controversy or claim to which this Agreement applies in any court having jurisdiction over such action in the state of California.

34. **Assignment:** Merchant may not assign any of its rights or delegate any of its obligations under this Agreement without the prior written permission of SVB. Any such assignment or delegation does not limit Merchant's obligations, indemnities, or liability to SVB. This Agreement is binding upon the parties hereto and to their respective successors and assigns.

35. **Amendment:** SVB has the right to amend any of the terms of this Agreement provided SVB provides written notice to Merchant at least 30 calendar days prior to the effective date of the amendment. Continuing to process transactions constitutes Merchant's acceptance of amendments.

36. **Attorney's Fees:** If a legal or arbitration proceeding is commenced in connection with any dispute under this Agreement, the prevailing party, as determined by the court or arbitrators, will be entitled to recover from the other attorneys' fees, costs, and in-house expenses incurred in connection with such action or proceeding.

37. **Governing Law:** This Agreement shall be governed by the laws of the State of California and shall, in addition, be subject to the by-laws and operating regulations of the card associations and networks. Merchant shall indemnify and hold SVB harmless for any costs, fees, or expenses, which SVB may incur in enforcing its rights hereunder.

38. **Miscellaneous:** If any court finds any portion of this Agreement invalid or unenforceable, the remaining provisions shall remain in force.

39. **Guarantee:** The owners or officers, as indicated in the Merchant Account Application, individually and collectively agree to guarantee to SVB, its agents and successors, the prompt and complete payment of all debts and obligations that result from the establishment of an account under the terms of this Agreement. The guarantee will remain in effect until all said debts and obligations are paid in full, not withstanding the termination or amendment of this Agreement.

American Express®, Discover®, Diners Club®, Carte Blanche®, and JCB® require separate approval. Payment processing services are provided by Silicon Valley SVB through Merchant e-Solutions, a registered service provider for CB&T, Columbus, GA. Debit network sponsorship is through Carrollton SVB, Baltimore, MD.                                    © Silicon Valley Bank

1              **SUSI & GURA**                (SPACE BELOW FOR FILING STAMP ONLY)

            A Professional Corporation

2              ATTORNEYS AT LAW

      SEVEN WEST FIGUEROA STREET, SECOND FLOOR

3       SANTA BARBARA, CALIFORNIA 93101-3191

         Telephone: (805) 965-1011

         Facsimile:  (805) 965-7351

4    Peter Susi, Bar No. 62957

5

6 Attorneys for Debtor and Debtor-in-Possession

7

8              **UNITED STATES BANKRUPTCY COURT**

9         **CENTRAL DISTRICT OF CALIFORNIA, NORTHERN DIVISION**

10

| | | |
|---|---|---|
| 11 | In re | ) | BK No. 9:12-bk-12837-RR |
| 12 | | ) | |
| | ALMA ROSA WINERY & VINEYARDS, | ) | Chapter 11 |
| 13 | LLC, | ) | |
| | | ) | |
| 14 |       Debtor. | ) | SECOND STIPULATION REGARDING |
| | | ) | INTERIM USE OF CASH |
| 15 | | ) | COLLATERAL AND ADEQUATE |
| | | ) | PROTECTION |
| 16 | | ) | |
| | | ) | |
| 17 | | ) | Hearing |
| | | ) | |
| 18 | | ) | Date:    October 3, 2012 |
| | | ) | Time:    2:00 p.m. |
| 19 | | ) | Place:   1415 State Street |
| | | ) | Courtroom 201 |
| 20 | | ) | Santa Barbara, CA |

21

22

23

24

25

26

27

28

114\944031.2

# EXHIBIT "B"

This Second Stipulation Regarding Interim Use of Cash
Collateral and Adequate Protection (the "Second Stipulation")
is entered into by and between Alma Rosa Winery & Vineyards,
LLC, the Debtor and Debtor-in-Possession ("Debtor"), and
secured creditor Silicon Valley Bank (the "Bank" or "SVB")by
and through their respective counsel of record.

On August 23, 2012, the Debtor and SVB entered into a
Stipulation Regarding Interim Use of Cash Collateral (the
"First Stipulation") pursuant to which SVB consented to the
Debtor's use of the Bank's cash collateral through January 20,
2013 for the purposes and in the total amounts set forth in the
budget (the "Original Budget") attached to the First
Stipulation. A copy of the Original Budget is attached hereto
as Exhibit "A."

On August 30, 2012, the Debtor filed a motion for court
approval of the First Stipulation (the "Motion"), which is set
for hearing at the above referenced date and time. Since the
filing of the Motion, the Debtor has modified and updated its
budget (the "Updated Budget"). A copy of the Updated Budget is
attached hereto as Exhibit "B." The Updated Budget, among
other changes, provides for increased payments to two
warehousemen lien claimants, Terravant Wine Company and Vintus
Wines, and reduced payments to the Bank.

The Debtor has requested, and the Bank has agreed, that
the Updated Budget be approved and that the Debtor be
authorized to use the Bank's cash collateral for the purposes
and in the total amounts set forth in the Updated Budget,
provided, however, that the Debtor (i) will make the interest

-2-

114\944031.2

12

1  payments to the Bank shown on Exhibit B to be paid to date but

2  which have not yet been paid and (ii) is only authorized to use

3  the Bank's cash collateral through December 2, 2012.  Any use

4  of the Bank's cash collateral beyond December 2, 2012 must be

5  approved by the Bank in a subsequent stipulation or by order of

6  the bankruptcy court upon a noticed motion.

7      All other terms and conditions of the First Stipulation

8  remain in full force and effect.

9      Further, the Bank and the Debtor wish to disclose to the

10  Court and include in the record in this Case their agreement

11  over the merchant services bank account ("MS Account")

12  maintained by the Debtor at the Bank.  The Debtor is in the

13  business of selling wine and accepts credit cards as a form of

14  payment.  The MS Account is an account into which credit card

15  payments are deposited.  The Debtor is informed that it cannot

16  obtain merchant services from any other banking institution by

17  reason of its bankruptcy filing.  The Debtor therefore desires

18  that the Bank maintain this account to enable the Debtor to

19  continue to accept credit card payments from its customers.

20  The Bank desires protection against chargebacks or credits

21  sought by the Debtor's customers or credit card companies.

22      To facilitate the parties' interests, the Bank has agreed

23  to permit the Debtor to maintain the MS Account, and the Debtor

24  has agreed to maintain a minimum balance in the MS Account of

25  $3,000 (the "Minimum Balance").  The Debtor also agrees that in

26  the event a chargeback reduces the balance below the Minimum

27  Balance, the Debtor shall deposit sufficient funds in the MS

28  Account to restore the Minimum Balance within one business day.

-3-

```
 1   The Debtor further agrees that once the Prepetition Bank

 2   Indebtedness (as defined in the First Stipulation) is paid in

 3   full, the Debtor shall maintain $10,000 in the MS Account for a

 4   period of six months following the pay-off to ensure against

 5   chargebacks during that six month period.  At the end of the

 6   six month period following the payoff of the Prepetition Bank

 7   Indebtedness, the Bank shall permit the Debtor to withdraw the

 8   balance in the MS Account.

 9   IT IS SO STIPULATED.

10   APPROVED AND SIGNED AS TO FORM AND CONTENT:

11   Dated:    Sept 28    , 2012

12

13

14   JONATHAN GURA of Susi & Gura,
     Counsel for Alma Rosa Winery &
15   Vineyards, LLC

16

17   Dated:    Sept 28    , 2012

18

19

20   STEPHEN J. KOTTMEIER of Hopkins &
     Carley, ALC, Counsel for Silicon
21   Valley Bank

22

23

24

25

26

27

28
```

                                    - 4 -

114\944031.2

# PROOF OF SERVICE OF DOCUMENT

I am over the age of 18 and not a party to this bankruptcy case or adversary proceeding.  My business address is:

7 West Figueroa Street, 2nd Floor
Santa Barbara, CA  93101

A true and correct copy of the foregoing document entitled (*specify*):   DEBTOR'S  MOTION PURSUANT TO 11 U.S.C. §
364 FOR AUTHORITY TO EXTEND MERCHANT SERVICES AGREEMENT WITH SILICON VALLEY BANK;
DECLARATION OF RICHARD SANFORD
will be served or was served **(a)** on the judge in chambers in the form and manner required by LBR 5005-2(d); and **(b)** in
the manner stated below:
:

**1.  TO BE SERVED BY THE COURT VIA NOTICE OF ELECTRONIC FILING (NEF)**:  Pursuant to controlling General
Orders and LBR, the foregoing document will be served by the court via NEF and hyperlink to the document. On
_____April 12, 2013_____, I checked the CM/ECF docket for this bankruptcy case or adversary proceeding
and determined that the following persons are on the Electronic Mail Notice List to receive NEF transmission at the email
addresses stated below:

☒  Service information continued on attached page

**2.  SERVED BY UNITED STATES MAIL**:
On (*date*)__April 12, 2013_____, I served the following persons and/or entities at the last known addresses
in this bankruptcy case or adversary proceeding by placing a true and correct copy thereof in a sealed envelope in the
United States mail, first class, postage prepaid, and addressed as follows. Listing the judge here constitutes a declaration
that mailing to the judge will be completed no later than 24 hours after the document is filed.

☒  Service information continued on attached page

**3.  SERVED BY PERSONAL DELIVERY, OVERNIGHT MAIL, FACSIMILE TRANSMISSION OR EMAIL** (state method
for each person or entity served):  Pursuant to F.R.Civ.P. 5 and/or controlling LBR, on (*date*)   April 12, 2013
I served the following persons and/or entities by personal delivery, overnight mail service, or (for those who consented in
writing to such service method), by facsimile transmission and/or email as follows.  Listing the judge here constitutes a
declaration that personal delivery on, or overnight mail to, the judge will be completed no later than 24 hours after the
document is filed.

Via Personal Delivery
The Honorable Robin Riblet
U.S. Bankruptcy Court
1415 State Street
Santa Barbara, CA  93101

☐  Service information continued on attached page

I declare under penalty of perjury under the laws of the United States that the foregoing is true and correct.

| April 12, 2013 | CHERYL NICCOLI | *Signature* |
|---|---|---|
| *Date* | *Printed Name* | |

---

This form is mandatory.  It has been approved for use by the United States Bankruptcy Court for the Central District of California.

*June 2012*                                                                              **F 9013-3.1.PROOF.SERVICE**

SERVICE LIST
Alma Rosa Winery & Vineyards
BK NO. 9:12-bk-12837-RR

## SERVED ELECTRONICALLY

Michaeline H Correa    mcorrea@hopkinscarley.com, bward@hopkinscarley.com
Brian D Fittipaldi    brian.fittipaldi@usdoj.gov
Jonathan Gura    jon@susigura.com, cheryl@susigura.com; kim@susigura.com
Stephen J Kottmeier    skottmeier@hopkinscarley.com, jmacaluso@hopkinscarley.com
Peter Susi    cheryl@susigura.com, peter@susigura.com
United States Trustee (ND)    ustpregion16.nd.ecf@usdoj.gov

## SERVED BY U.S. MAIL

Debtors

Alma Rosa Winery & Vineyards, LLC
Attention J. Richard Sanford
7250 Santa Rosa Road
Buellton, CA 93427

Susan F Petrovich
Brownstein Hyatt Farber Schreck
21 E Carrillo St
Santa Barbara, CA 93101